## Commonwealth *v.* Tenbroeck, Appellant.

*Criminal law—Murder—Opinion—Witness—Evidence— Reputation—Charge of jury—Separation of jury—Statements—Confession.*

1. On the trial of an indictment for murder, it is competent for a physician, who saw the deceased shortly after his death, to express an opinion of approximately how long the man had been dead, judging by the amount of heat he found in the body.

2. Voluntary statements made by a defendant charged with murder as to the occurrence, may be used against him, although not containing a confession of guilt.

3. Where a son, charged with murder of his father in their home, when no other members of the family were there, testifies that the killing was done by four negroes, it is competent to prove by neighbors, having means of observation, that no parties, like those described by the defendant, were seen going to or from the house, or in the neighborhood, on the afternoon of the occurrence.

4. Where the trial judge on a trial for murder fully and accurately instructs the jury as to the value of good character as a defense, it is not error to add "but, where the jury is satisfied beyond a reasonable doubt under all the evidence, that the defendant is guilty, evidence of previous good character is not to overcome the conclusion which follows from that view of the case." It is only in the absence of other adequate instructions upon the question that such language is condemned.

5. It is not error for the trial judge in a murder case to refer to the homicide as a felonious killing, where the defendant charges that the killing was the wilful and premeditated act of other parties.

6. In a murder trial where the verdict is guilty of murder in the second degree, a temporary separation of the jury is unimportant and will not be considered, on appeal, as a ground for reversal.

7. On an appeal from a conviction of murder in the second degree the judgment will not be reversed, where the judge states to the jury, after they had informed him that they could not agree: "You must agree......If some one of you should become physically unable to remain, the situation would be different, but as long as you are physically able to remain, it is your duty to undertake to agree."

Argued May 5, 1919. Appeal, No. 243, Jan. T., 1919, by defendant, from judgment of O. & T. Tioga Co., May

252 COMMONWEALTH *v.* TENBROECK, Appellant.

T., 1918, No. 2, on verdict of murder in the second degree in case of Commonwealth v. John Tenbroeck. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Indictment for murder. Before CHANNELL, P. J.

Verdict of guilty of murder in the second degree, on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions sufficiently indicated in the opinion of the Supreme Court.

*A. B. Dunsmore,* with him *Paul J. Edwards,* for appellant, cited as to the separation of the jury: Com. v. Peiffor, 15 Pa. 468.

*Norman B. Leslie,* with him *F. E. Watrous, H. F. Marsh* and *Thomas A. Crichton,* for appellee.—The authority of a judge to adopt reasonable methods to bring about a verdict cannot be doubted if the verdict be based upon conscientious convictions and to that end a judge may impress upon the jury the importance of reaching such a verdict: Com. v. Martin, 34 Pa. Superior Ct. 451; Com. v. Cook, 6 S. & R. 557; Com. v. Clue, 3 Rawle 498; Hilander v. Com., 111 Pa. 1; Com. v. Fitzpatrick, 121 Pa. 109.

In view of the verdict—that of murder in the second degree, the same rule should be adopted for the purpose now under consideration as if the prisoner had been tried for second degree murder: Moss v. Com., 107 Pa. 267.

In cases less than capital, jurors may, in the discretion of the court, be permitted to separate, after being duly cautioned, without creating any legal presumption that undue influence thereby operated on their minds: Moss v. Com., 107 Pa. 267; Hilands v. Com., 111 Pa. 1.

OPINION BY MR. JUSTICE WALLING, June 21, 1919:

This is a homicide case in which defendant was convicted of murder of the second degree. Edgar Tenbroeck, a carpenter, fifty-four years of age, resided with his family at Tioga Junction, in Tioga County. At about two o'clock on the afternoon of March 14, 1918, he started with his wife and daughter and others to walk toward Lawrenceville to see the high water; but after going a short distance left the party and returned home where his son John, the defendant, then eighteen years of age, had been left alone. Shortly after four o'clock that afternoon the dead body of Mr. Tenbroeck was found on the floor of his home with a bullet wound in the back of the head. The absence of powder marks and also of a gun near the body precluded the theory of suicide. However, a rifle was found in another room with which the crime might have been committed, and the defendant was prosecuted therefor and convicted of murder of the second degree; and from the judgment entered thereon brought this appeal.

We find no cause for reversal. It was competent for the physician, who saw the deceased early that evening, in testifying to express an opinion of approximately how long the man had been dead, judging by the amount of heat he found in the body. In any event the answer was not important.

Defendant, who had been working at Elmira, New York, for some time, was home on a visit, and his story of the occurrence, as related at the time and testified to in court, is to the effect that, not feeling well that afternoon, he went upstairs to rest and was aroused by a noise, like the wind, and soon after heard the report of a gun and ran down stairs where he saw his father lying on his back on the kitchen floor dead, with four negroes standing around his head, one of whom started toward defendant, who went back upstairs, climbed down a grapevine and ran to the railroad station sixteen hundred feet away where he informed Miss Kelley, a telegraph operator,

who gave the alarm. There was no error in permitting her, and others to whom he later made similar statements, to testify thereto when called by the Commonwealth. Voluntary statements made by a defendant as to the occurrence may be used against him although not containing a confession of guilt.

It was competent to prove by neighbors, having means of observation, that no parties like those described by defendant were seen going to or from the Tenbroeck home, or in the neighborhood, that afternoon.

The case rested upon circumstantial evidence. Admittedly defendant was in the house at the time of the homicide and there is nothing but his statement to indicate the presence there of any other person, except the deceased. On his way to the station defendant passed two men, one a neighbor, but made no mention of the occurrence. On going to the house some minutes later the outer doors were found locked and defendant was the first to reënter, which he did alone in the same way he had left and went downstairs and opened the door. Some features of the defense lack probability. It is not probable that four negroes could go to this house in broad daylight, commit the crime and escape without being seen or leaving some trace. It is not probable that they would all stand around the head of the murdered man after the shooting. It is not probable that the son under such circumstances would discover that his father had been shot in the head, as he told Miss Kelley, especially as the wound was upon that part of the head which rested upon the floor. It is not probable that defendant would voluntarily reënter the house alone so soon after he had left the four murderers there. Nor is it probable that he would pass in silence the first men he met after leaving the house. There were some other circumstances, including the evidence of a witness that in the previous August defendant had stated to him, in substance, that he was not living at home because of his father's ill treatment and that the first chance he got he would shoot him, but

said later in the same conversation that he would think it over and might not do so.  The credibility of that witness was attacked, and for the defense it was shown by members of the family and others that the father and son were devoted to each other and lived in harmony.  Some money, a watch and several boxes of matches were missing and the bureau drawers, beds, etc., were found in disorder, which might suggest robbery; and there was evidence that defendant's reputation was good.  However, under all the circumstances, the case was for the jury and the trial judge could not properly direct a verdict for defendant.

A man of good standing is less likely to commit crime and evidence of good reputation may of itself work an acquittal by creating a reasonable doubt of guilt where in the absence of such evidence there would be no reasonable doubt.  It is substantive evidence in favor of innocence and should be considered by the jury in connection with the other evidence, and when so considered if there is a reasonable doubt of guilt there must be an acquittal; but if after considering all the evidence in the case, including that as to reputation, the jurors are satisfied beyond a reasonable doubt of the defendant's guilt they should convict.  A charge is erroneous that naturally leaves with the jury the impression that they should convict if satisfied of the defendant's guilt from the other evidence, notwithstanding that as to good reputation.  However, all of the charge upon that subject should be considered and if it clearly and correctly states the rule there is no error, although a single sentence thereof standing alone might be misunderstood by the jury.  So considered, there is no just ground in this case for criticism.  Where the trial judge, as here, fully and accurately instructs the jury as to the value of good character as a defense, it is not error to add, "but, where the jury is satisfied beyond a reasonable doubt under all the evidence, that the defendant is guilty, evidence of previous good character is not to overcome the conclusion

which follows from that view of the case": Com. v. Webb, 252 Pa. 187, 194; Com. v. Harmon, 199 Pa. 521; Com. v. Eckerd, 174 Pa. 137, 148. It is only in the absence of other adequate instructions upon the question that such language is condemned: Com. v. Aston (No. 1), 227 Pa. 106, 110; Com. v. Cate, 220 Pa. 138.

It was not error for the trial judge to refer to the homicide as a felonious killing, as it clearly was under defendant's own testimony and not less so if committed by him. In the latter case it would appear to have been such a deliberate crime as to justify the intimation of the trial judge that it was murder of the first degree (Com. v. Ronello, 251 Pa. 329). However, the question of degree was left to the jury, and as to that the verdict does defendant no injustice.

As the conviction was of the second degree the case ceases to be a capital one and the temporary separation of the jury, of which complaint is made, becomes unimportant: Hilands v. Com., 111 Pa. 1; Moss v. Com., 107 Pa. 267. The court was right in refusing to arrest the trial to investigate such complaint, but properly did so after verdict, and found that no harm had resulted to the defendant. We deem it proper to say that, in a case where the jurors have in charge the prisoner's life, no pains should be spared to secure a strict observance of the rule that they be kept together and free from even a suspicion of improper influence.

The jury, after forty-eight hours' deliberation, came into court and reported their inability to agree upon a verdict, whereupon the trial judge explained the nature of the case and importance of reaching a verdict and said, "You must agree," but added, "If someone of you should become physically unable to remain, the situation would be different, but as long as you are physically able to remain, it is your duty to undertake to agree." He also expressed great sympathy for the jury and enjoined them to continue their deliberations. Considering, as we must, all that the judge said, it did not constitute such a coer-

cion of the jury as to invalidate the verdict. It is always highly important that the jury agree in a capital case, for their discharge without a verdict, except in case of absolute necessity, amounts to an acquittal, as a defendant cannot be put twice in jeopardy of his life for the same offense: Com. v. Fitzpatrick, 121 Pa. 109; Hilands v. Com., supra; Com. v. Clue, 3 Rawle 498; Com. v. Cook, 6 S. & R. 577.

There is no merit in the criticism of the charge as a whole. It contains a full and accurate statement of the law and an impartial reference to the facts. It was both fair and adequate and at its conclusion, on the invitation of the court, counsel declined to suggest any corrections or additions. In fact, at every stage of the trial the rights of the defendant were properly safeguarded.

The assignments of error are overruled and the judgment is affirmed.